LINK: 74

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEXIA HOLDINGS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, et al., <br><br> Defendants. | Case No. 2:11-CV-07165 MRP (MANx) <br><br> **ORDER RE MOTION TO REMAND** |

## I. INTRODUCTION & BACKGROUND

Plaintiffs are several institutional investors that purchased mortgage backed securities ("RMBS") structured and sold by subsidiaries of Countrywide Financial Corporation ("CFC") between 2005 and 2007. Plaintiffs have sued CFC, several related entities, CFC's current owner Bank of America,[1] and several of Countrywide's former officers and directors. The parties refer to ten of the Defendants as the "Countrywide Defendants."[2] The Court uses the term "Countrywide" below to refer to the Countrywide Defendants interchangeably. The claims are brought under Sections 11, 12 and 15 of the Securities Act of 1933, as well as state law. Plaintiffs originally filed this action in New York state court. Defendants removed the case to federal court on the basis of bankruptcy "related to" jurisdiction under 28 U.S.C. § 1452. ECF No. 1. Specifically, the Countrywide Defendants claimed that removal was proper because several of the RMBS at issue in this case were originated by the now-bankrupt third-party lender American Home Mortgage ("AHM"). ECF No. 1. Plaintiffs moved to remand on the basis either that this Court does not have jurisdiction or that equitable remand is appropriate. Memo in Supp. of Mot. to Remand at 2–3, ECF No. 75.

For the reasons set out below, Plaintiffs' Motion is **DENIED**.

## II. THE COURT HAS JURISDICTION

This suit alleges that Defendants misstated the quality of the mortgage loans underlying 148 RMBS. Some of the mortgage loans that constituted three of those RMBS were not originated by Countrywide, but rather by AHM. Countrywide

---

[1] Specifically, Plaintiffs have asserted successor liability claims against Bank of America Corp. and NB Holdings Corp.

[2] The "Countrywide Defendants" are CFC, Countrywide Home Loans, Inc., Countrywide Home Loans Servicing, LP, CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Securities Corp., Countrywide Capital Markets, LLC, and N. Joshua Adler. The Countrywide Defendants removed this case with the consent of the other Defendants.

2

1  Home Loans ("CHL") purchased those loans from AHM pursuant to Mortgage
2  Loan Purchase and Interim Servicing Agreements (the "Purchase Agreements").
3  Devine Decl. Ex. 9, ECF No. 102.  In those agreements, AHM explicitly agreed to
4  indemnify CHL against:
>   any losses, damages, penalties, fines, forfeitures, judgments and any
>   related costs including, without limitation, reasonable and necessary
>   legal fees, resulting from any claim, demand, defense or liability
>   based upon or arising out of any act or omission on the part of the
>   Seller in receiving, processing, funding or servicing any Mortgage
>   Loan, or from any assertion based on, grounded upon or resulting
>   from a breach or alleged breach of any of the Seller's representations
>   and warranties contained in this Article III.

Defendants contend that the filing of this lawsuit automatically triggered CHL's indemnification rights and that those indemnification rights impact the bankruptcy estate, providing "related to" jurisdiction.  This Court recently found, on identical facts, that the indemnification rights present in the same Purchase Agreements impact the AHM bankruptcy estate and therefore provide the basis for federal jurisdiction.  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 309–11 (C.D. Cal. 2010) ("*Stichting*").  The *Stichting* case involved a slightly lower volume of AHM-originated mortgages ($700 million in *Stichting*, as opposed to over $750 million in this case), but otherwise nearly identical facts.  The Court adopts its earlier reasoning here:  this case is "related to" the AHM bankruptcy and has a "close nexus" to the bankruptcy by virtue of Countrywide's contractual indemnification rights against AHM.  *Id.  See also Hendricks v. Detroit Diesel Corp.*, No. C–09–3939 EMC, 2009 WL 4282812, at *6 (N.D. Cal. Nov. 25, 2009); *Parke v. Cardsystems Solutions, Inc.*, No. C 06–04857 WHA, 2006 WL 2917604, at *4 (N.D. Cal. Oct. 11, 2006); *Citigroup, Inc. v. Pac. Inv. Mgmt. Co.*, LLC, 296 B.R. 505, 508 (C.D. Cal. 2003); *Pac. Life Ins. Co. v. J.P. Morgan Chase & Co.*, No. SA CV 03–813 GLT, 2003 WL 22025158, at *1–2 (C.D. Cal. Jun.30,

2003); *Sizzler Restaurants, Inc. v. Belair & Evans LLP*, 262 B.R. 811, 818–19 (Bankr. C.D. Cal. 2001).

### III. THE COURT DECLINES TO REMAND THE CASE ON EQUITABLE GROUNDS

Plaintiffs urge that, even if federal jurisdiction is proper, the Court should remand the case on equitable grounds. 28 U.S.C. § 1452(b) permits a court to "remand [a removed claim] on any equitable ground." Courts in the Ninth Circuit consider up to fourteen factors in determining whether to remand a case on equitable grounds. *Citigroup*, 296 B.R. at 508. Those factors include:

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

The Court, as it did in *Stichting*, finds that the second, third, fourth, and ninth factors are most important in this case. *Stichting*, 447 B.R. at 312. Those factors, along with factor seven, weigh against remand. Factors one, five, six, eight, ten, eleven, thirteen, and fourteen favor neither side. Factor twelve cuts in favor of remand, but is outweighed by the others.

Only three of the nine causes of action in this case are brought under federal law, but those three causes of action constitute the heart of the case. Those claims raise complicated and unsettled questions related to, *inter alia*, falsity, materiality,

4

tolling, standing, and statutes of repose and limitations. The state law claims, by contrast, present no unsettled or difficult legal issues that would militate in favor of remand. The Court has overseen cases relating to Countrywide for the past four years. It has addressed many of the federal and state issues involved in this case. The Court's familiarity with Countrywide-issued RMBS and the fact that the Court is currently supervising a multidistrict litigation comprised of nearly identical cases make it well-positioned to adjudicate both the federal and state claims in this case.

The Court recently remanded another RMBS case on equitable grounds. *Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*, 448 B.R. 517 (C.D. Cal. 2011) ("*FHLB Chicago*"). That case involved a suit by a Federal Home Loan Bank against several RMBS originators, including Countrywide. The Court remanded it to state court, reasoning that, "this case is more related to the other Federal Home Loan Bank cases filed in Illinois and Washington state courts than it is to the Maine State litigation in this Court." *Id.* at 526. This case does not involve a Federal Home Loan Bank or non-Countrywide-issued RMBS. Unlike *FHLB Chicago*, this case would benefit from coordination with the other Countrywide RMBS suits currently pending before the Court. Finally, Defendants have indicated that they do not plan to transfer this case to the bankruptcy court, protecting Plaintiffs' right to a jury trial. In short, the factors that persuaded the Court to remand *FHLB Chicago* are not present here.

For the reasons set forth above, Plaintiffs' Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 8, 2011

_____
Hon. Mariana R. Pfaelzer
United States District Judge