LINK: 85

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 DEXIA HOLDINGS, INC., et al.,

12           Plaintiffs,

13    v.

14 COUNTRYWIDE FINANCIAL CORPORATION, et al.,

15           Defendants.

16

Case No. 2:11-cv-07165-MRP-MAN

**ORDER RE MOTIONS TO DISMISS THE COMPLAINT**

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION & BACKGROUND

This securities action concerns residential mortgage-backed securities ("RMBS") purchased by twelve plaintiffs ("Plaintiffs") in 148 offerings structured and sold by several of the defendants.  The Complaint alleges federal and state causes of action against Countrywide Financial Corporation ("CFC" or "Countrywide"), four Countrywide subsidiaries, the special purpose vehicles that issued the RMBS Certificates,[1] Bank of America and two subsidiaries, and several of Countrywide's former officers and directors.  The various defendants are referred to as the Countrywide Defendants,[2] the Depositor Defendants,[3] the Individual Defendants,[4] the Individual Securities Act Defendants,[5] and the Bank of America Defendants.[6]

---

[1] A Certificate is a document that shows ownership of a mortgage-backed security issued pursuant to a registration statement and prospectus supplement in a public offering.  Each Certificate represents a particular tranche within an offering.  Because "Certificate" refers to the document evidencing ownership of a specific tranche, the Court uses the terms "tranche" and "Certificate" somewhat interchangeably.  An Offering refers to the process by which the Certificates were sold to Plaintiffs.  The Offering Documents refer to the Registration Statements, Prospectuses and Prospectus Supplements, Term Sheets, and other written materials pursuant to which the Certificates were offered.

[2] The Countrywide Defendants are: Countrywide Financial Corporation ("CFC"), Countrywide Home Loans, Inc. ("CHL"), Countrywide Home Loans Servicing LP, Countrywide Capital Markets ("CCM"), and Countrywide Securities Corporation ("CSC").

[3] The Depositor Defendants are: CWALT, Inc., CWABS, Inc., and CWHEQ, Inc.

[4] The Individual Defendants are: Angelo R. Mozilo, Stanford L. Kurland, David A. Spector, Eric P. Sieracki, Ranjit Kripalani, Jennifer S. Sandefur, David A. Sambol, and N. Joshua Adler.

[5] The Individual Securities Act Defendants are: Stanford L. Kurland, David A. Spector, Eric P. Sieracki, Ranjit Kripalani, Jennifer S. Sandefur, and N. Joshua Adler.

[6] The Bank of America Defendants are: Bank of America Corp., NB Holdings Corp., and BAC Home Loans Servicing, L.P.

1    This case is identical in many respects to *Allstate Ins. Co. v. Countrywide*
2  *Fin. Corp.*, No. 2:11-CV-05236.  There, as here, the plaintiffs alleged that
3  Countrywide and others violated New York common law and federal securities law
4  by misrepresenting the quality of the loans underlying the RMBS securities at issue
5  in the case.  The Court has now issued two orders in the Allstate case.  The first,
6  referred to as *Allstate I*, dismissed the federal claims as untimely, found the state
7  law fraud claims adequately pleaded, dismissed the negligent misrepresentation
8  and aiding and abetting claims as inadequate, and dismissed the Bank of America
9  Defendants with leave to replead.  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No.
10  2:11-CV-05236-MRP (MANx), 2011 WL 5067128 (C.D. Cal. Oct. 21, 2011)
11  ("*Allstate I*").  The first Allstate order relied upon the Court's decisions in the
12  Maine State Retirement System cases.  The Court has issued three relevant
13  opinions in those cases, which the Court refers to as *Maine State I*, *Maine State II*,
14  and *Maine State III*.  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp.
15  2d 1157 (C.D. Cal. 2010) ("*Maine State I*"); *Maine State Ret. Sys. v. Countrywide*
16  *Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 WL 1765509 (C.D. Cal. Apr.
17  20, 2011) ("*Maine State II*"); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No.
18  2:10-CV-0302 MRP (MANx), 2011 WL 4389689 (C.D. Cal. May 5, 2011)
19  ("*Maine State III*").  The second Allstate order, released two weeks ago, dismissed
20  successor liability claims against the Bank of America Defendants with prejudice.
21  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx),
22  2011 WL 5067128 (C.D. Cal. Feb. 2, 2012).  The Court relies on all five prior
23  orders here, and assumes familiarity with them.

## II.    DISCUSSION

25    The Court's prior orders are applicable to this case.  Those rulings, of
26  course, do not estop the parties here; they were free to re-argue any issue that the
27  Court had previously decided in another case.  In some instances they did so, in
28  others they merely noted their objections for the record.  Nothing in the briefs or

1  advanced at oral argument has convinced the Court to depart from its previous
2  rulings; it therefore adopts the legal reasoning and conclusions of *Allstate I,*
3  *Allstate II, Maine State I, Maine State II,* and *Maine State III* and orders the
4  following:

5  **A.   THE FEDERAL CLAIMS ARE LARGELY BARRED BY THE STATUTE OF**
6  **REPOSE**

7  *1.    The Federal Claims Are Entirely Time-Barred Except as to Two Certificates*
8         Plaintiffs' Securities Act claims were first brought on January 28, 2011.
9  They are therefore barred by the statute of repose unless they are tolled by an
10 earlier class action complaint.  Plaintiffs propose two putative class action
11 complaints that were later consolidated.  The Court refers to these actions as the
12 *Luther* action or actions.[7]  However, this Court has previously held that a
13 Certificate was not a "part of" the *Luther* actions for purposes of *American Pipe*
14 tolling unless one of the named plaintiffs in those actions actually had standing to
15 assert a claim on behalf of purchasers of the Certificate.  *Maine State I,* 722 F.
16 Supp. 2d at 1166–67; *Maine State III,* 2011 WL 4389689, at *6.  To have had
17 standing to sue on behalf of purchasers of a Certificate, the *Luther* named plaintiff
18 must have purchased from the same offering and tranche.  *Maine State III,* 2011
19 WL 4389689, at *6.  Only three of the Certificates in this case were also purchased
20 by a *Luther* named plaintiff.  For one of those, CWALT 2006-OA2, the statute had
21 already run by the time this action was filed.[8]  The Court therefore **DISMISSES**

22

23 [7] *Luther v. Countrywide Home Loans Servicing LP,* No. BC 380698 (Cal. Super.
24 Ct. Nov. 14, 2007); *Washington State Plumbing and Pipefitting Pension Fund
   Trust v. Countrywide Fin. Corp., et al.,* No. BC 392571 (Cal. Super. Ct. June 12,
25 2008).  The actions were later consolidated into one action, referred to here as
   *Luther*.
26 [8] The CWALT 2006-OA2 Prospectus Supplement issued on March 30, 2006.  The
27 three year period of repose therefore began to run on that date.  It was tolled
   between October 16, 2008 and January 6, 2010 (the period between when a named
28 plaintiff who had purchased CWALT 2006-OA2 joined the *Luther* action and

1  Causes of Action Five, Six, and Seven except as to CWMBS 2007-5 A2 and

2  CWHEQ 2006-S7 A3.  Dismissal is **WITH PREJUDICE**.

3  *2.    The Section 11 Claims as to the Remaining Securities Are Time-Barred as*

4  *Against the Individual Securities Act Defendants*

5        The "offering" date for statute of repose purposes is (i) the date of the

6  prospectus supplement for issuers and underwriters, and (ii) the date of the

7  registration statement for directors and signing officers.  17 C.F.R. §§

8  230.430B(f)(2).  *See also Maine State I*, 722 F. Supp. 2d at 1166, n.8.  This means

9  that the statute of repose began to run on March 6, 2006 for CWMBS 2007-5 A2,

10  and on April 12, 2006 for CWHEQ 2006-S7 A3.

11        Defendant Sieracki has demonstrated that, as to the officers and directors,

12  the claims regarding CWMBS 2007-5 A2 and CWHEQ 2006-S7 A3 are time-

13  barred even if they were tolled during the pendency of the *Luther* action.  Gordon

14  Decl. at 3–4.  Plaintiffs do not address this point in their brief, and the Court takes

15  their silence as an effective concession.  And, the *Luther* named plaintiffs that

16  purchased CWMBS 2007-5 A2 and CWHEQ 2006-S7 A3 were not named

17  plaintiffs in the *Maine State* action, so that action can have had no effect on tolling.

18  The Court therefore **DISMISSES** the remainder of Cause of Action Five as against

19  the Individual Securities Act Defendants.  Dismissal is **WITH PREJUDICE**.

20

21

22

23

---

24  when *Luther* was dismissed).  The statute began to toll again on January 14, 2010,

25  the date that the *Maine State* action was filed in federal court.  The statute ceased

26  tolling, at the latest, on July 13, 2010, when a consolidated complaint was filed in
*Maine State* that did not include a named plaintiff who had purchased CWALT

27  2006-OA2.  Exhibit I to Defendants' Motion demonstrates that, even excluding the

28  applicable tolling periods, Section 11's three-year statute of limitations expired
before Plaintiffs filed their complaint on January 24, 2011.

1   **B.**   **THE SECTION 11 CLAIMS AS TO THE TWO REMAINING SECURITIES ARE**
2          **ADEQUATELY PLEADED**

3          As in *Maine State III*, the Court applies the Rule 8(a) pleading standard to
4   the remaining Section 11 claims. *Maine State III*, 2011 WL 4389689, at *17. As
5   before, the Complaint alleges (i) that Countrywide systematically abandoned its
6   underwriting guidelines, (ii) that the Offering Documents contained statements
7   regarding Countrywide's underwriting guidelines that were both material and false,
8   (iii) and that Plaintiffs were injured thereby. Complaint ¶ 5. The Court reaches the
9   same result as in *Maine State III*. Plaintiffs' claim that Countrywide abandoned its
10  underwriting standards and that that abandonment infected the Offering
11  Documents for all Countrywide-issued RMBS is adequately pleaded. *Maine State*
12  *III*, 2011 WL 4389689 at *17. Defendants' arguments about materiality and injury
13  are better addressed with the benefit of a full factual record.

14         As discussed in Section II.E.2, below, the transfer of title allegations are
15  inadequate. The Court therefore **DISMISSES** the transfer of title allegations in
16  Cause of Action Five as well as any portion of Causes of Action Six or Seven that
17  rely on those allegations. Dismissal is **WITHOUT PREJUDICE**. The Court
18  otherwise **DENIES** Defendants' motion with respect to the remaining Section 11
19  claims.

20  **C.**   **THE SECTION 12(A)(2) CLAIMS ARE PARTIALLY BARRED**

21         Section 12(a)(2) provides that any person who "offers or sells" a security by
22  means of a prospectus containing a materially false statement or material omission
23  shall be liable to any "person purchasing such security from him." 15 U.S.C. § 77 l
24  (a)(2). This limits liability to statutory sellers within the meaning of Section 12. In
25  *Maine State III*, the Court concluded that the Depositor Defendants (referred to
26  there as the "Issuer Defendants") were not statutory sellers for purposes of Section
27  12. *Maine State III*, 2011 WL 4389689, at *9–10. The Court therefore

28

1    **DISMISSES** Cause of Action Six as to the Depositor Defendants.  Dismissal is

2    **WITH PREJUDICE**.

3         That leaves CSC.  Plaintiffs allege that they purchased CWHEQ 2006-S7 A3

4    directly from CSC but not CWMBS 2007-5 A2.  The Court therefore **DISMISSES**

5    Cause of Action Six as it relates to CSC and CWMBS 2007-5 A2.[9]  Dismissal is

6    **WITH PREJUDICE**.  Cause of Action Six may proceed with respect to CSC's

7    sale of CWHEQ 2006-S7 A3 only.

8    **D.    THE SECTION 15 CLAIMS ARE BARRED AS TO MOZILO AND COUNTRYWIDE**

9    **HOME LOANS SERVICING LP**

10        Section 15 liability attaches when a defendant directly or indirectly controls

11   a violator of Sections 11 or 12(a)(2) of the Securities Act.  15 U.S.C. § 77o.

12   Section 15 is subject to a one-year statute of limitations.  15 U.S.C. § 77m.  The

13   two remaining Certificates appeared in the *Washington State* Complaint only.

14   Mozilo was not a defendant in that action.  Complaint ¶ 273.  The remaining

15   Section 15 claims are therefore time-barred as against him.

16        *Maine State III* upheld Section 15 claims against CFC, CSC, CHL, and

17   CCM by virtue of their ownership and control of the Depositor Defendants.  *Maine*

18   *State III*, 2011 WL 4389689, at *12–13.  It upheld a Section 15 claim against

19   David Sambol based on his day-to-day control over CFC.  *Id*. at *14.  The

20   allegations are similar in this case and the Court reaches the same result.  Plaintiffs

21   have adequately alleged that CFC, CSC, CHL, CCM, and Sambol are controlling

22   persons for purposes of Section 15 liability.  The Court finds that the Section 15

23   claims are not time-barred as to Mr. Sambol for the same reasons as in *Maine State*

24   *III*.  *Id*. at 14–17.

25

26   _____

27   [9] The Section 12 claim also fails with respect to CWMBS 2007-5 A2 because the
     purchase did not fall within the forty-day prospectus delivery period and was

28   therefore not "pursuant to" the initial offering.  *Maine State III*, 2011 WL 4389689,
     at *11.

1    The earlier *Maine State III* decision did not address Defendants Countrywide

2    Home Loans Servicing LP, Kurland, Spector, Sieracki, Adler, Kripalani, or

3    Sandefur. Defendants Sieracki, Spector, Kurland, Adler, Kripalani, and Sandefur

4    are similarly situated to Mr. Sambol. One of the initial *Luther* complaints asserted

5    a Section 15 claim against each defendant, that claim was dropped in the

6    Consolidated *Luther* Complaint, and was then reasserted in a later action. As with

7    Sambol in *Maine State III*, these defendants have been consistently accused of

8    violating the Securities Act of 1933. The Court therefore declines to dismiss the

9    Section 15 claims against any of these defendants on statute of limitations or

10   repose grounds.

11   Defendants Sieracki, Spector, Kurland, Adler, Kripalani, and Sandefur each

12   argue that Plaintiffs have failed to adequately allege that they are control persons

13   under Section 15. CW Mot. at 27–28; Fischetti Aff. Ex. A, at 3-4; Friedman-

14   Boyce Decl. ¶¶ 18-19; Hamilton Decl. ¶ 12; Codell Decl. ¶ 9; Gordon Decl. ¶¶ 12-

15   13; Blad Decl. ¶ 7. The allegations with respect to these defendants go no farther

16   than listing the defendant's name, title, and listing which registration statements

17   that defendant signed. Complaint ¶¶ 251–56. This pushes Rule 8's stricture that a

18   statement of the claim be "short" to its outer bounds. Nevertheless, the facts

19   alleged are marginally sufficient to support a Section 15 claim. It is a plausible

20   inference that a director or high-level officer of an entity exercised control over

21   that entity. *See Rafton v. Rydex Series Funds*, No. 10-CV-01171-LHK, 2011 WL

22   31114, at *12 (N.D. Cal. Jan. 5, 2011) ("It is certainly 'plausible' that high level

23   officers (like the Independent Trustees) who signed the Registration Statements

24   were in a position to exercise control over the Fund and its disclosures.").

25   The Court is unclear on what basis Plaintiffs contend that Countrywide

26   Home Loans Servicing LP is a control person. By their own admission,

27   Countrywide Home Loans Servicing LP is a subsidiary of CCM that is involved in

28

servicing, not underwriting, residential home loans. Complaint ¶ 20. Plaintiffs' Opposition points to the Declaration of David Wales, which states the following:

> Countrywide Capital and Countrywide Servicing "participated in competitive bid and negotiated underwritings and performed underwriting services for [Countrywide Home], Countrywide [Securities] and third parties." See Exhibit J (Maine State slip op.), at 24-25.

Wales Decl. ¶ 52 (citation in original). This is a gross mischaracterization of *Maine State III*. First, Mr. Wales omitted that the passage he cites began: "The SAC alleges . . . ." The fragment Mr. Wales cites did not hold anything about any party; it merely recited the Maine State plaintiffs' allegations. Second, *Maine State III* certainly did not hold anything related to Countrywide Home Loans Servicing LP. Countrywide Home Loans Servicing LP was not a party to *Maine State*, and it appears nowhere in the *Maine State III* opinion. Finally, it makes no difference whether Mr. Wales' assertion regarding Countrywide Home Loans Servicing LP is true, as it appears in a declaration rather than the Complaint. The Complaint itself is devoid of any facts from which the Court could infer that Countrywide Home Loans Servicing LP is a control person under Section 15. Cause of Action Seven is therefore **DISMISSED** as to Countrywide Home Loans Servicing LP. Dismissal is **WITHOUT PREJUDICE**.

E.    THE COMMON LAW FRAUD AND FRAUDULENT INDUCEMENT CLAIMS ARE LARGELY ADEQUATE

*1.    Most of the Fraud Claims are Adequately Pleaded*

Neither side has raised any choice of law question with respect to Plaintiffs' state law fraud claim. To the extent that the briefs address the state law claims at all, they cite to New York cases. *E.g.* CW Mot. at 23, n. 47. As in *Allstate I*, "implied consent . . . is sufficient to establish choice of law." *Krumme v. Westpoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-*

1    *Berkeley Civil & Env't Eng'r v. Tippetts-Abett-McCarthy-Stratton,* 888 F.2d 239,

2    242 (2d Cir. 1989)).[10]   Under New York law, the elements of a fraud claim are: (i)

3    a material misrepresentation of a fact, (ii) knowledge of its falsity, (iii) an intent to

4    induce reliance, (iv) justifiable reliance by the plaintiff, and (v) damages.

5    *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d 553, 559 (2009).

6    Fraudulent inducement shares the same elements.   *Perrotti v. Becker, Glynn,*

7    *Melamed & Muffly LLP,* 82 A.D.3d 495, 498 (1st Dept. 2011).

8         Plaintiffs allege that Defendants made false statements about (i)

9    underwriting standards, (ii) appraisals, loan to value ("LTV") ratios, and ratings,

10   and (iii) title transfers.   The Court addressed the first two categories of

11   representations in *Allstate I.*   There, the Court found that a nearly identical

12   complaint alleged facts to satisfy each element of a fraud claim.   Defendants have

13   not identified any material difference between the allegations in this case and those

14   in *Allstate I.*   The fraud and fraudulent inducement allegations are sufficient with

15   respect to Plaintiffs' systemic abandonment of underwriting standards, appraisals,

16   LTV ratios, and ratings claims.

17   *2.     Plaintiffs' Transfer of Title Allegations are Insufficient*

18        The transfer of title allegations contained in paragraphs 146–57 are slightly

19   different.   Allegations of fraud must be pleaded with particularity.   *Vess v. Ciba-*

20   *Geigy Corp. USA,* 317 F.3d 1097, 1104 (9th Cir. 2003) ("It is established law, in

21   this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to

22   state-law causes of action.").   Plaintiffs allege that "the Offering Documents . . .

23   represented in substance that the issuing trust for that offering had obtained good

24

25   [10]   As in *Allstate I,* the Court notes that implied consent for purposes of this motion
     to dismiss does not preclude any party from asserting a choice of law issue at some
26   later date.   *See also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning*
     *Agency,* 216 F.3d 764, 788 (9th Cir. 2000) (assertion of a defense pursuant to an
27   incorrect choice of law does not automatically bar the later assertion of the same
28   defense under the proper law).

1   title to the mortgage loans comprising the pool for the offering." Complaint ¶ 151.

2   Plaintiffs later identify a paragraph in each Prospectus Supplement that states:

3             In addition, each of the sellers will represent and warrant that,
4        prior to the sale of the related mortgage loans to the depositor, the
5        applicable seller had good title to the mortgage loans sold by it. . . .
         Under the pooling and servicing agreement, *the depositor will assign*
6        *all its right, title and interest in the representations, warranties and*
         *covenants (including the sellers' repurchase or substitution*
7        *obligation) to the trustee for the benefit of the certificateholders*."

8

9   Complaint ¶ 193 (emphasis in Complaint).

10         The "represented in substance" language in paragraph 151, if true, is

11   certainly material and plausibly false. However, that language fails to identify any

12   statement with sufficient particularity under Rule 9(b). By contrast, Plaintiffs have

13   not identified any reason that the Prospectus Supplement language in paragraph

14   193 was either material or false. The language emphasized by Plaintiffs appears to

15   be a straightforward description of the PSA's requirements. Even if it could be

16   read as a manifestation of present intent, the allegations in paragraphs 146–57 are

17   that Countrywide, not the depositor, failed to properly effect the transfer of title.

18   The Court therefore **DISMISSES** the allegations related to transfer of title, but

19   otherwise **DENIES** Defendants' motion with respect to the fraud and fraudulent

20   inducement claims.

21   *3.      Plaintiffs' Loss Causation Allegations are Sufficient*

22         In *Allstate I*, the Court folded its discussion of loss causation into its

23   discussion of damages, and it addressed both in a rather cursory manner. Because

24   the issues repeat themselves both here and in the *Thrivent* case, the Court takes this

25   opportunity to separate damages from loss causation and briefly expand on the

26   *Allstate I* decision. As the Court noted in *Allstate I*, common law fraud damages

27   are calculated as the difference between the purchase price of the asset and its true

28   value, plus interest, generally measured as of the date of sale." *Merrill Lynch &*

1   *Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007). That rule is

2   enough to end the damages inquiry. Plaintiffs adequately alleged that the

3   underlying loans were riskier than advertised. A riskier loan carries with it an

4   increased chance of default and therefore a lower value. Plaintiffs have therefore

5   adequately alleged damages as required by New York law.

6       The Court went on to cite *Merrill Lynch* for the proposition that the Supreme

7   Court's federal loss causation jurisprudence does not apply to a New York

8   common law cause of action. *Allstate I*, 2011 WL 5067128, at \*19; *Merrill Lynch*,

9   500 F.3d at 183 (citing *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336 (2005)). This

10   was correct as a technical matter; *Dura* addressed federal claims only and the New

11   York Court of Appeals has not extended *Dura* to common law fraud claims. *Dura*,

12   544 U.S. at 338. The Second Circuit noted, as this Court should have, that the

13   Supreme Court nevertheless based *Dura* on the common law requirement of

14   proximate cause. *Id.* at 346. The fraud claim arises out of the common law and

15   requires Plaintiffs to show that "a defendant's misrepresentations were the direct

16   and proximate cause of the claimed losses." *MBIA Ins. Corp. v. Countrywide*

17   *Home Loans, Inc.*, 87 A.D.3d 287, 295 (1st Dept. 2011). In an efficient market,

18   such as the one for a highly liquid equity, proving common law proximate cause

19   may require the same corrective disclosure and price reaction that post-*Dura* courts

20   look to in federal securities cases. *See Merrill Lynch*, 500 F.3d at 183. This case,

21   however, involves highly illiquid RMBS.

22       Without allegations of informational efficiency or price transparency, the

23   Court would not expect to see a perfectly linked corrective disclosure and price

24   decline.[11] Instead, the Court is left to analyze whether the Plaintiffs have alleged

25

26

---

27   [11] Several courts, when faced with illiquid securities, have not required a *Dura*-

28   style corrective disclosure even under federal law. *E.g. In re Charles Schwab*
  *Corp. Secs. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009); *Rafton*, 2011 WL 31114,

1   an adequate causal nexus between misrepresentation and damage.  Plaintiffs have

2   alleged that the underlying loans had a higher-than-advertised risk of default, and

3   that they were therefore worth less than Plaintiffs paid for them.  Complaint ¶¶

4   201–204.  Plaintiffs have also alleged that the Certificates have experienced

5   higher-than-anticipated rates of default and that they are now worth less than

6   Plaintiffs paid for them.  *Id.* ¶¶ 195–96.  The link between a risk of default and a

7   Certificate's value is indisputable and provides sufficient causal nexus to survive a

8   motion to dismiss.  Defendants object that the housing crisis and broader financial

9   meltdown caused the Certificates' decline in value.  Untangling the effect of the

10  alleged misrepresentations from the effects of the broader financial crisis will

11  present a complicated issue of fact.  It is therefore better saved for a more complete

12  factual record.

13  **F.    THE AIDING AND ABETTING CLAIMS ARE INADEQUATELY PLEADED**

14         As in *Allstate I*, Plaintiffs allege that several defendants have aided and

15  abetted the common law fraud discussed above.  In New York, an aiding and

16  abetting claim requires (i) actual knowledge and (ii) substantial participation.

17  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).  These elements are

18  subject to Rule 9(b).  *Id.* at 292–93; *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 923–24

19  (N.D. Cal. 2008).  Substantial assistance must be pleaded with particularity, while

20  actual knowledge may be averred generally.  Fed. R. Civ. Proc. 9(b) ("Malice,

21  intent, knowledge, and other conditions of a person's mind may be alleged

22  generally.").  *See also Berry*, 580 F. Supp. 2d at 924 ("Rule 9(b) requires only a

23  general allegation of 'knowledge,' " but particularized allegations of substantial

24  assistance.); *Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F. Supp. 2d

25  1113, 1165 (D. Ariz. 2010) (Circumstances of common law fraud must be pleaded

26  with particularity, though scienter may be averred generally.).

27  _____

28  at *10–11.  The Court decides this issue under New York common law, and so
    need not reach the question of federal loss causation.

As in *Allstate I*, Plaintiffs allege aiding and abetting against the same defendants whom they accuse of a primary fraud violation. In *Allstate I*, the Court dismissed such claims on the premise that it was impossible to aid and abet oneself. *Allstate I*, 2011 WL 5067128, at *21. At oral argument, Plaintiffs raised the more nuanced point that a defendant might commit certain primary violations while aiding and abetting others. Tr. at 64. Such a scenario is certainly possible. However, Plaintiffs have not explained how such a theory might apply in this case.

Plaintiffs also allege aiding and abetting against Countrywide Home Loans Servicing, CCM, Mozilo, and Sambol. As in *Allstate I*, the charge requires a pleading of substantial assistance with the actual fraud that Plaintiffs allege. Here, that means that a defendant must have assisted with the allegedly false statements that form the basis of the complaint; assistance with underwriting at Countrywide generally does not suffice. Plaintiffs have not alleged such substantial assistance with respect to Countrywide Home Loans Servicing, Mozilo, or Sambol. As in *Allstate I*, none of the allegations regarding these defendants would establish their participation in making the particular statements that Plaintiffs allegedly relied upon. *Allstate I*, 2011 WL 5067128, at *21. As in *Allstate I*, the sole allegation against CCM is that it operates CSC as a subsidiary. Complaint ¶ 22. If CCM controlled CSC's actions and authorized its statements, then CCM should have been named as a primary violator. If CCM maintained a level of control that falls short of "authorized" but nevertheless meets the "substantial participation" standard, then Plaintiffs must explain how with particularity.

The Court therefore **DISMISSES** Cause of Action Three as to all Defendants. Dismissal is **WITHOUT PREJUDICE**. If Plaintiffs elect to replead this cause of action they must explain which defendants they contend substantially assisted with each false statement and on what grounds they so-contend.

1

**G.    THE NEGLIGENT MISREPRESENTATION CLAIMS ARE DISMISSED FOR**

2

**FAILURE TO PLEAD A SPECIAL RELATIONSHIP BETWEEN PLAINTIFFS AND**

3

**ANY DEFENDANT**

4

   "A claim alleging negligent misrepresentation must also be based on some

5

special relationship which implies a close degree of trust between the plaintiff and

6

the defendant." *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529, 724 N.Y.S.2d

7

66 (2d Dept., 2001).  An arms-length commercial transaction does not generally

8

implicate such a "special relationship." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263–

9

64, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).  Dexia has pleaded no facts that

10

would elevate its purchases from an arms-length commercial transaction.  Absent

11

such facts, the negligent misrepresentation claims cannot stand. *Allstate I*, 2011

12

WL 5067128 at *23.  Cause of Action Eight is **DISMISSED**.  Dismissal is

13

**WITHOUT PREJUDICE.**[12]

14

**H.    THE SUCCESSOR LIABILITY CLAIMS ARE INADEQUATELY PLEADED**

15

   *Allstate I* held that New York's choice of law rules require the Court to

16

apply Delaware law to *de facto* merger claims against Bank of America.  2011 WL

17

5067128, at *6.  *Allstate II* held that more detailed allegations than Plaintiffs' were

18

insufficient to state a claim for *de facto* merger or assumption of liabilities.

19

*Allstate II*, 2012 WL 335730, at *11–14.  The Court applies the same tests and

20

legal reasoning set out in *Allstate II*.  Plaintiffs have failed to plead any explicit or

21

implicit assumption of liabilities.  They have similarly failed to plead any facts

22

23

24

25

26

27

28

---

[12] Defendants did not raise the special relationship requirement as a basis for dismissal in their moving brief.  Rather, the issue was raised in declarations filed on behalf of Defendants Sambol and Mozilo, and then echoed in the Defendants' Reply. Tu Decl. at 5; Fischetti Decl. Ex. A ,at 4–5, CW Reply at 12.  The pleading deficiency applies to all defendants equally, and so the Court dismisses the claim as to all Defendants.  If Plaintiffs choose to amend, the Court is prepared to parse any differences between the various defendants at that time and with the benefit of more specific allegations.

1  from which the Court could infer that a *de facto* merger had taken place.  The

2  Court therefore **DISMISSES** Causes of Action Four and Nine.  Dismissal is

3  **WITHOUT PREJUDICE**.

### III.   CONCLUSION

5      For the reasons discussed above, the Court **DISMISSES** Causes of Action

6  Five, Six, and Seven except as to CWMBS 2007-5 A2 and CWHEQ 2006-S7 A3.

7  Dismissal is **WITH PREJUDICE**.  The Court **DISMISSES** the remaining portion

8  of Cause of Action Five as to the Individual Securities Act Defendants.  Dismissal

9  is **WITH PREJUDICE**.  The Court **DISMISSES** those portions of Causes of

10  Action One, Two, Five, Six, and Seven that concern transfer of title allegations.

11  Dismissal is **WITHOUT PREJUDICE**.  The Court **DISMISSES** Cause of Action

12  Six except as to CSC's sale of CWHEQ 2006-S7 A3.  Dismissal is **WITH**

13  **PREJUDICE**.  The Court **DISMISSES** Cause of Action Seven as against Mozilo

14  and Countrywide Home Loans Servicing LP.  Dismissal is **WITHOUT**

15  **PREJUDICE**.  The Court **DISMISSES** Cause of Action Three, Four, Eight and

16  Nine as to **ALL DEFENDANTS**.  Dismissal is **WITHOUT PREJUDICE**.  The

17  Court otherwise **DENIES** Defendants' Motion to Dismiss.  Plaintiffs have leave to

18  submit an amended complaint within 21 days of this Order.

19      **IT IS SO ORDERED.**

21  DATED:  February  17  , 2012     _____
                                         MARIANA R. PFAELZER

22                                       Hon. Mariana R. Pfaelzer

23                                       United States District Judge